IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LENORA T.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 20 C 2329 |
| v. | ) |
| | ) Magistrate Judge Gabriel A. Fuentes |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER[3]

Before the Court is Plaintiff Lenora T.'s motion for summary judgment seeking remand of the Administrative Law Judge's ("ALJ") opinion denying her application for Supplemental Security Income ("SSI") benefits and Disability Insurance Benefits ("DIB") (D.E. 17) (R. 39) and the Commissioner's cross motion for summary judgment to affirm that decision. (D.E. 22.)[4] Plaintiff filed her claim for benefits alleging she has been disabled due to pins inside toes of each of her feet and arthritis in her hands and feet since April 5, 2015.[5] (R. 13, 625-32, 651, 672-79.) Plaintiff's date last insured is December 31, 2023. (R. 13.)

---

[1] Plaintiff's surname has been omitted from this opinion in compliance with the Court's Internal Operating Procedure No. 22.

[2] The Court substitutes Kilolo Kijakazi for her predecessor, Andrew Saul, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On August 7, 2020, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including entry of final judgment. (D.E. 11.)

[4] The Appeals Council ("AC") subsequently denied review of the opinion (R. 1), making the ALJ's decision the final decision of the Commissioner. *Butler v. Kijakazi*, 4 F.4th 498, 500 (7th Cir. 2021).

[5] In the AC's previous remand order dated January 25, 2019, the AC directed the ALJ to consider the period from the alleged onset date of January 1, 2004, however, the Plaintiff amended her alleged disability onset date from January 1, 2004 to April 5, 2015. (R. 13, 315-18, 651.) The AC further directed the ALJ that

I.      **ADMINISTRATIVE RECORD**

Plaintiff, 50, was born on April 6, 1965, on the date following the amended disability onset date of April 5, 2015. (R. 13.) Plaintiff seeks disability benefits due to limitations stemming from numerous ailments. Because the Court's decision relates only to Plaintiff's stroke in January 2019 and subsequent MRI in June 2019, the discussion of the evidence is limited accordingly.

**A. Medical Evidence**

In January 2019, Plaintiff suffered a hemorrhagic stroke with hemiparesis and was hospitalized. (R. 2200, 2834-3306.) Plaintiff developed impaired speech (R. 2334, 2847) and right-sided facial weakness. (R. 2457.) She was placed on medications for seizures. (R. 2334, 2852). Upon discharge from the hospital, Plaintiff was instructed that she needed 24-hour assistance. (R. 2847, 2856).

An MRI of her brain on June 13, 2019, reviewed by William Greenlee, M.D., revealed several focal abnormalities (a problem with nerve, spinal cord, or brain function) including signal abnormality that involved the cortex and the subcortical white matter of the left frontal lobe laterally and posteriorly; curvilinear gyriform low-signal intensity in the aforementioned distribution; patchy, abnormal high signal intensity predominantly in the subcortical white matter; region of abnormal encroachment within the larger signal abnormality; enhancing lesion along the cortex and subcortical white matter of the right parietal lobe laterally that demonstrated subtle high-signal intensity and a punctuate microhemorrhage; scattered foci of high signal intensity in

---

additional evidence concerning Plaintiff's breast cancer be obtained and considered, further consideration be given to the Plaintiff's maximum residual functional capacity, and consider evidence from a vocational expert to clarify the effect of the assessed limitations on the Plaintiff's occupational base. (R. 13, 317.) Plaintiff's stroke (and subsequent MRI of her brain), discussed in greater detail below and the focus of this Order, occurred in January 2019 well after her applications for benefits were submitted and in the same time frame as the AC's remand order, with the MRI taking place in June of 2019. (R. 315-18, 2200, 2233-36, 2834-3306.)

the white matter of both cerebral hemispheres that was consistent with small vessel ischemic change; and symmetrical abnormal high-signal intensity in the basal ganglia. (R. 2233-36.)

**B. Hearing**

On September 5, 2019, Plaintiff, who was represented by counsel, testified at a hearing before an ALJ. (R. 36-83.) A vocational expert ("VE") also testified at the hearing.

Plaintiff's counsel's opening statement at the hearing detailed a significant change in Plaintiff's condition since the beginning of 2019, when she suffered a cerebrovascular accident ("CVA") – a stroke – with imaging of her brain showing significant abnormalities. (R. 41.) At the hearing, Plaintiff testified that she had a stroke in December 2018 and that her seizures started in January 2019.[6] (R. 55.)

Plaintiff testified that she "keep[s] having seizures" and that her most recent seizure was the day before the hearing. (R. 49.) Plaintiff stated that the medications she is on is causing her seizures, but that her doctors do not know which exact medication is actually triggering the seizures. (R. 49-50.) Plaintiff's medications include Azathioprine (50 milligrams), Levetiracetam or Keppra (750 milligrams), Vimpat (100 milligrams), and melatonin. (R. 50.)

Plaintiff testified that she had a seizure the night before the hearing at about 7 p.m. (R. 52.) She was at home at the time with her daughter. (*Id.*) After taking her medication, she started shaking, drooling, and her left side went numb. (*Id.*) Prior to this seizure, she stated that the last time she had a seizure was the previous Saturday and Sunday (multiple seizures), with the Sunday seizures resulting in an emergency room visit. (R. 53.) Plaintiff reported that at the hospital she was told to continue her medication, prescribed a new medication, and underwent an MRI "to check [her] brain." (*Id.*)

---

[6] The medical records indicate Plaintiff suffered the stroke in January 2019. (R. 2834-3306.)

3

Plaintiff also testified about working as a babysitter for her three grandchildren. (R.62.) Her grandchildren were in her home when she experienced her stroke. (R. 60-61.) She stated that her 17-year-old daughter helped watch the children during the summer of 2019 and also when her daughter was off school. (R. 62, 69-70.) Plaintiff testified that she stopped watching her grandchildren in August of 2019, when her grandchildren attended school and because she continued to experience seizures. (R. 49, 62.) When Plaintiff was alone babysitting her grandchildren, she would microwave meals for them and read them books. (*Id.*)

### C. ALJ Opinion

The ALJ applied the five-step inquiry required by the Social Security Act in reaching his decision to deny Plaintiff's request for benefits. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 5, 2015. (R. 15.) At Step Two, the ALJ determined that Plaintiff suffered from the following severe impairments: arthritis and degenerative joint disease of the bilateral feet, and degenerative joint disease of the bilateral knees. (R. 16.) The ALJ determined that Plaintiff's physical impairments of sarcoidosis, cardiomegaly, liver disease, alcohol abuse, anemia, thrombocytopenia, peripheral neuropathy, pruritus, low back pain, left breast cancer, and hemorrhagic stroke with hemiparesis were non-severe because the evidence did not show that these conditions cause more than minimal limitations on Plaintiff's ability to perform work-related activities. (R. 16-19.) The ALJ further determined that the Plaintiff's medically determinable mental impairments of major depressive disorder and anxiety were also non-severe. (R. 19-20.) In support of this finding, the ALJ assessed the so-called "paragraph B criteria" and found that Plaintiff's impairments caused a mild limitation in understanding, remembering, or applying information; a mild limitation in interacting with

others; a mild limitation in concentrating, persisting, or maintaining pace; and no limitation in adapting or managing herself. (R. 19.)

At Step Three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Commissioner's listed impairments. (R. 20.)

Before turning to Step Four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of light work with the following limitations:

> She can occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. She can sit, stand, and walk for six hours in a typical eight-hour workday. She can push and pull as much as she can lift and carry. She can frequently operate hand and foot controls bilaterally. She can frequently handle and finger objects bilaterally. She can occasionally climb ramps and stairs, but should not climb ladders, ropes, or scaffolds. She can frequently stoop, kneel, and crouch and occasionally crawl. She cannot work at unprotected heights or operate moving mechanical parts.

(R. 20.) At Step Four, the ALJ noted that Plaintiff was capable of performing her past relevant work as a babysitter. (R. 25.) In the alternative, at Step Five, the ALJ concluded that a significant number of other jobs existed in the national economy that Plaintiff could perform given her age, education, work experience, and RFC, including the representative positions of deli worker, cafeteria attendant, and stock checker. (R. 26-27.) As such, the ALJ found that Plaintiff had not been under a disability since April 5, 2015, her alleged onset date. (R. 27.)

## II. LEGAL STANDARD

An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, – U.S. –, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. The Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's

determination. Rather, this court asks whether the ALJ's decision reflects an adequate logical bridge from the evidence to the conclusions." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (citations and quotations omitted). The claimant has the burden of proof at steps one through four of the five-step sequential process for determining disability. *See Mandrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022). At step five, the burden of proof shifts to the Commissioner of Social Security to show that the claimant can adjust to other work existing in "a significant number of jobs…in the national economy." *See Brace v. Saul*, 970 F.3d 818, 820 (7th Cir. 2020).

### III. ANALYSIS

Plaintiff makes three arguments in support of remand: (1) the ALJ erred in assessing Plaintiff's RFC; (2) the ALJ erred in weighing medical opinion evidence; and (3) the ALJ erred in assessing Plaintiff's subjective allegations that addressed the intensity, persistence, and limiting effects of her pain and symptoms. (D.E. 18: Pl.'s Br. at 5-14.) As explained below, the Court agrees that the ALJ erred in assessing Plaintiff's RFC and in particular, that the ALJ should have submitted the June 13, 2019, MRI of Plaintiff's brain to a medical professional for further review, and that this failure requires remand. For, an ALJ must build a logical bridge between the evidence and the conclusions. *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). Because we find that this error necessitates a remand, the Court will not address Plaintiff's remaining arguments. *See DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("Because we determine that the ALJ did not properly evaluate DeCamp's limitations in concentration, persistence, and pace, we do not address DeCamp's other arguments.").

**A. The ALJ Erred in Independently Assessing Plaintiff's MRI.**

Plaintiff contends that the ALJ should have submitted the June 13, 2019, MRI of Plaintiff's brain to a state agency neurologist for review or summoned a medical expert to review all of the pertinent evidence. (D.E. 18: Pl.'s Br. at 9.) The Commissioner states that the ALJ was only required to contact an additional expert if the record cannot support a decision and arguing, in this case, that the ALJ's conclusion that a medical expert's testimony was not necessary made "perfect sense" because even in light of the MRI, Plaintiff's functionality was adequately captured in the RFC. (D.E. 23: Def.'s Br. at 10-11.)

In doing so, the Commissioner relies on two unpublished decisions: *Keys v. Berryhill*, 679 F.App'x 477, 480-81 (7th Cir. 2017) (finding no error when the ALJ did not submit two spinal MRIs for review by agency physicians where plaintiff did not explain how the findings undermined the original opinions of the agency physicians); and *Olsen v. Colvin*, 551 F. App'x 868, 875 (7th Cir. 2014) (upholding denial of benefits when MRI evidence post-dating state agency consultant's report showed only mild changes in plaintiff's condition).

But the "relevant question when determining whether an ALJ should have sought additional medical review is not *what* evidence the ALJ considered, but whether she was qualified to do so." *Tobias B. v. Kijakazi*, No. 20 cv 2959, 2022 WL 4356857, *5 (N.D. Ill. September 20, 2022). In *Kemplen v. Saul*, the Seventh Circuit summarized its prior decisions (including *Keys* and *Olsen*) and provided the following standard: "the ALJ must seek an additional medical opinion if there is potential decisive evidence that postdates the state agency consultant's opinion." 844 F.App'x. 883, 888 (7th Cir. 2021) (citing cases). The Seventh Circuit explained that the issue "comes down to whether the new information 'changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment by a non-examining physician and by evaluating

7

himself the significance of [the subsequent] report…' or whether the updated information was minor enough that the ALJ did not need to seek a second opinion." *Id.* at 887, quoting *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016).

The Seventh Circuit has repeatedly stated that an ALJ may not "play[] doctor and interpret new and potentially decisive medical evidence without medical scrutiny." *Kemplen*, 844 F.App'x. at 887, quoting *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (internal quotation marks omitted) (finding that the "ALJ impermissibly assessed the MRI on his own without the assistance of a medical expert"); *see also Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018)*; Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018) (remanding where the ALJ was not qualified to make his own determination that the MRI results were consistent with his assessment without the benefit of an expert opinion; to avoid this error, the ALJ could have sought an updated medical opinion); *Moreno v Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) ("Fatally, the [ALJ] failed to submit that MRI to medical scrutiny, as she should have done since it was new and potentially decisive medical evidence."). The Seventh Circuit has also upheld the denial of benefits, as the Commissioner points out, when MRI evidence post-dating the state agency consultant's report showed only mild changes in the plaintiff's condition. *Keys*, 679 F.App'x at 480-81; *Olsen*, 551 F.App'x at 875.

The Commissioner contends that, while acknowledging that the MRI noted several abnormalities, the ALJ found no further documentation of treatment of follow-up after the MRI, and that despite the findings of the MRI, Plaintiff still had a significant degree of functionality because she was able to watch her grandchildren over that summer and appropriately respond to questions at the hearing. (D.E. 23: Def.'s Br. at 10.) But, here, the MRI submitted after the state agency consultant's opinion "changed the picture" enough to necessitate an updated medical

8

review because of the several abnormalities noted in the MRI and subsequent seizures experienced by Plaintiff. *See Kemplen*, 844 F.App'x. at 887; *Sofia W. v. Kijakazi*, Case No. 3:21 cv 50461, 2023 WL 2333303, *8 (N.D. Ill. March 2, 2023) (finding that plaintiff's MRI reasonably could have changed the reviewing physician's opinion on plaintiff's limitations and that although not all later evidence will satisfy this standard, "MRI imaging often does").

These abnormalities included signal abnormality that involved the cortex and the subcortical white matter of the left frontal lobe laterally and posteriorly; curvilinear gyriform low-signal intensity in the aforementioned distribution; patchy, abnormal high-signal intensity predominantly in the subcortical white matter; region of abnormal encroachment within the larger signal abnormality; enhancing lesion along the cortex and subcortical white matter of the right parietal lobe laterally that demonstrated subtle high-signal intensity and a punctuate microhemorrhage; scattered foci of high-signal intensity in the white matter of both cerebral hemispheres that was consistent with small vessel ischemic change; and symmetrical abnormal high signal intensity in the basal ganglia. (R. 2233-36.) This is precisely the kind of "barely intelligible medical [jargon]" that the Seventh Circuit has warned against an ALJ relying on without the assistance of a medical professional. *Goins*, 764 F.3d at 680; *see also Israel v. Colvin*, 840 F.3d 432, 439-440 (7th Cir. 2016) ("Because no physician in the record has opined on whether these [MRI] results are consistent with Israel's claim of disabling pain, and because the reports are replete with technical language that does not lend itself to summary conclusions, we cannot say whether the results support or undermine Israel's claim.") In addition, Plaintiff testified that her daughter helped her watch her grandchildren and that she experienced seizures, as recently as the day before her hearing with the ALJ.

The Court agrees that the record contains new and significant "potentially decisive" evidence that could have affected Plaintiff's RFC. Because the ALJ did not obtain an expert's review of the MRI to guide the ALJ's assessment of Plaintiff's RFC, the ALJ failed to create an accurate and logical bridge from the evidence to the ALJ's conclusion. On remand, the ALJ shall obtain a medical opinion on Plaintiff's MRI (and seizures) which can determine if Plaintiff suffered any additional functional restrictions.

**B. The Remedy Is Properly Limited to Reversal and Remand.**

Plaintiff requests that the Court not only reverse the decision of the ALJ but remand this matter with instructions to grant an award of benefits. (D.E. 18: Pl.'s Br. at 14). Such a remedy is only suitable where "the record can yield but one supportable conclusion." *Martin v. Saul*, 950 F.3d 369, 376 (7th Cir. 2020), quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993). For the same reason that ALJs cannot interpret medical evidence without the assistance of medical professionals, neither can this Court. Accordingly, the Court is unable to find that Claimant is indisputably disabled, and thus, the case is remanded for further proceedings. *See Martin*, 950 F.3d at 377 ("The vast majority of the time we will not award benefits and instead remand for further proceedings.").

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion for summary judgment (D.E. 17), denies the Commissioner's motion for summary judgment (D.E. 22), and remands the case for further proceedings consistent with this opinion.

**ENTER:**

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: May 8, 2023**